# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

**MARC JOSEPH HENDERSON,**

    **Plaintiff,**

v.                                      **CASE NO: _____**
                                                              **JURY DEMANDED**

**CITY OF MEMPHIS,**
**COLONEL DARRYL SHEFFIELD**
**(in his Individual Capacity),**
**LIEUTENANT CECIL DAVIS**
**(in his Individual Capacity), and**
**LIEUTENANT GLENN BARBER**
**(in his Individual Capacity),**

    **Defendants.**

## COMPLAINT

This is an action for damages for violating Plaintiff's constitutionally guaranteed rights under the United States Constitution, namely: Amendment IV (Search and Seizure); Amendment V (deprivation of liberty and property without due process of law); and Amendment XIV (deprivation of liberty without due process of law).

Said violations were taken under color or law by City of Memphis and/or its agents, as alleged herein.

Plaintiff relies on 42 U.S.C. §1983, which provides in relevant part as follows:

1

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured...

## I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Marc Joseph Henderson, (hereinafter "Henderson"), is an adult resident citizen of the United States, who at all relevant times has resided in Shelby County, TN.

2. Defendant, City of Memphis, is a municipality (municipal corporation) created under the laws of the State of Tennessee. Among its duties is the duty to establish and maintain a Police Department, to prescribe its duties and by ordinance to establish and fix the grades, ranks and classifications of all officers and other employees of the Police Department of the City of Memphis. The City by ordinance is empowered to designate the number of officers at the several approved ranks, as may be necessary to efficiently conduct the department. The Memphis Police Department is empowered to train, discipline and oversee the actions of its officers, including persons serving in commanding positions, including colonels, majors and lieutenants. The City may be reached with service of process by serving the Mayor, Jim Strickland, and by serving the City Attorney, Bruce McMullen.

3. Defendant, Colonel Darryl Sheffield, is sued in his individual capacity. He is at all relevant times the commanding officer of the Appling Farms (Police) Precinct, and as such has responsibilities for all personnel serving under him,

including the other named Defendants and the Plaintiff.  Sheffield is an adult resident citizen of Shelby County, Tennessee.

4. Defendants, Lieutenant Cecil Davis and Lieutenant Glenn Barber, are sued in their individual capacities.  They were at all relevant times in supervisory positions of authority over Plaintiff.  Both Davis and Barber are adult resident citizens of Shelby County, Tennessee.

5. Jurisdiction is conferred on this Court pursuant to federal question, 28 U.S.C. §1331, and §1343 (civil rights).

6. Venue is appropriate in this district under 28 U.S.C. §1391(b)(1) and (2), and (c)(2).

## **FACTS**

7. Plaintiff, Marc Joseph Henderson, was first employed by City of Memphis on January 3, 2011.  After successfully completing his training and his probationary period, he was promoted to the position of Police Officer II.  He is a fully commissioned (POST) Police Officer of the Memphis Police Department.

8. Henderson has well served the City of Memphis and its citizens.

9. For the period May to November, 2018, Plaintiff was experiencing problems in his marriage.  His wife became close friends with Sheffield's wife, and as a result Sheffield intruded into Henderson's personal life, without Henderson's permission.  Henderson's wife was known by Henderson to come to the precinct, where she would meet with Sheffield and pour out her concerns to him.  Sheffield expressly ordered Henderson to cooperate with his wife, and to "do as she wanted" in the divorce. Sheffield suggested that Henderson might be depressed or even

suicidal, which Henderson adamantly denied. Said allegation was baseless. Henderson was offended that Sheffield felt entitled to intrude on his personal life. Sheffield even sent officers to Henderson's home on several occasions to "check on" Henderson. Henderson felt these actions were harassing and threatening, and were baseless.

10. During that same time period, Henderson's wife repeatedly threatened Henderson that she would call Sheffield's wife and get Henderson "in trouble" if Henderson did not do what she wanted.

11. On November 13, 2018, Plaintiff was working overtime on the day shift. On a break he went to his home, to use the restroom and to eat breakfast. This was allowed. His wife was angry when he appeared, and she called Sheffield's wife and complained that Henderson had come home. He still resided there. He had every right to go to his residence while on a break. There was no physical altercation.

12. At around 1:30 p.m., Plaintiff was instructed to return to the precinct, at which time he was relieved of duty "for his own good." This decision was made by Colonel Sheffield. Plaintiff was told repeatedly by Sheffield that he was not in trouble – there was nothing disciplinary facing him.

13. Plaintiff contends that unless Plaintiff was charged with some dereliction of duty, or some criminal offense, Sheffield had no legal basis to relieve him from duty.

14. Plaintiff was then ordered to go to Major Able's office (in Appling Farms Precinct), where Major Able and Officer Stewart (CIT trained) tried repeatedly to convince Henderson to go to Lakeside Hospital "for his own good." Plaintiff had not

exhibited any aggressive behavior. He was not depressed, or excessively angry. His behavior was appropriate under the circumstances. On Sheffield's orders, Plaintiff was not allowed to leave the Major's office until and unless he agreed to go to Lakeside. After an hour or two, Plaintiff agreed (unwillingly). Henderson had no choice. He did not drive his car to Lakeside. Sheffield had Henderson transported by Officer Stewart in his patrol car.

15. Henderson remained at Lakeside for about three hours. No attention was being paid to him. Henderson realized he had no reason to be there. He then calmly called the precinct for a patrol car to transport him back to the precinct, where he had left his personal vehicle.

16. As the patrol car arrived at Appling Farms Precinct, the driver, Officer Holmes, told Henderson that Lieutenant Cecil Davis had instructed him to wait with Henderson outside the rear door of the Precinct. Henderson was not allowed out of the vehicle.

17. Around 6:00 p.m. (18:00) several lieutenants came out of the Precinct building and surrounded the patrol car in which Henderson was sitting. Henderson was instructed by Lieutenant Cecil Davis to get out of the patrol car, at which time he was told to turn around, and to put his hands behind his back. Davis then handcuffed Henderson, and placed him in the backseat of Officer Nigel Payne's patrol car.

18. Henderson requested to speak to Sheffield. Sheffield came outside, and they spoke at length. Sheffield told Henderson that Henderson's refusal to accept

the divorce is why he was sitting in the backseat of a patrol car, handcuffed. Sheffield said he personally made the decision to "commit" Henderson.

19. Throughout the events at the Precinct, no body cameras or in-car videos were running, in violation of MPD policy, which requires body cameras and in-car video to be initiated prior to police interaction with anyone. This policy includes police officers who are being arrested.

20. The handcuffing and placing of Henderson into the patrol car is a seizure of Henderson; yet he was not being charged with any crime of any kind. Neither had any police officer, including Sheffield or the other Defendants, observed Henderson violating any law or ordinance. There was no warrant for his arrest. The seizure of Henderson was baseless, arbitrary and capricious.

21. Sheffield lacked the authority to commit Henderson to a mental hospital. Sheffield did not go to any Judge requesting an emergency commitment. Sheffield is not a doctor, or psychiatrist.

22. Sheffield ordered that Officer Payne transport Henderson to the Memphis Mental Health Institute ("MMHI") in downtown Memphis. The transport occurred at approximately 7:30 p.m. on November 13, 2018. The transporting officer left Henderson at the Crisis Assessment Center located at MMHI.

23. Henderson was then assessed. After evaluation, Henderson was released sometime after midnight on November 14, 2018, which was approximately five hours after arrival at MMHI. The evaluating doctors told Henderson they could not find any reasons why he had been brought there, that there was no basis for an involuntary committal.

24. This result was not good enough for Colonel Sheffield. After Henderson had returned home, several officers knocked on his bedroom door. They had been sent by Colonel Sheffield to "check" on him. By then, the Colonel had learned that Lakeside had no reason to treat Henderson, that MMHI had found no basis for an involuntary committal, and that CIT Officer Stewart had written a lengthy memorandum finding that Henderson did not meet the criteria for an involuntary transport.

25. As a direct and proximate result of the constitutional deprivations set forth above, Henderson has been injured profoundly. His sense of personal safety at work has disappeared. He reasonably has concluded he cannot trust the Defendants named herein, who together acted in concert to deprive him of his life and liberty, and his rights to due process. He has learned that he cannot trust his commanding officers or his fellow officers. He was forced to endure a very embarrassing psychiatric evaluation for no reason, and certainly without legal authority. His reputation with the Memphis Police Department has been injured. The MPD has not taken any appropriate action to discipline or reprimand those employees responsible, namely the individual Defendants named herein. His marriage has been damaged by the actions of Colonel Sheffield. His personal relationships have been invaded. His privacy interests have been invaded. He cannot even peacefully sleep in his own bed, without the police intruding into his home, without his permission and without a warrant.

26. The actions of Colonel Sheffield and Lieutenants Cecil Davis and Glenn Barer may be imputed to City of Memphis. They were at all relevant times agents of

the employer, City of Memphis. They are likewise responsible for their own actions to the extent that they acted beyond their authority.

## IV. CAUSES OF ACTION

27. Plaintiff incorporates paragraphs 1 through 26 as if copied in words and figures.

28. Plaintiff states a claim against Defendants pursuant to 42 U.S.C. §1983, on the facts and allegations set forth herein.

## V. PRAYER FOR RELIEF

Plaintiff on the facts stated asserts that he should be granted relief as follows:

1. That the Court grant an award of compensatory damages not to exceed three Million Dollars.

2. That the Court enter a declaratory judgment that Defendants violated 42 U.S.C. §1983 as asserted by Plaintiff.

3. Award Plaintiff his reasonable attorney's fees and costs of the cause.

4. All other relief, legal and equitable to which Plaintiff may be entitled under the premises.

4. Jury trial demanded.

Respectfully submitted,

KATHLEEN CALDWELL, PLLC

*s/Kathleen L. Caldwell, #9916*
2670 Union Avenue Ext., Suite 110
Memphis, TN 38112
Telephone: (901) 458-4035
Facsimile: (901) 458-4037
kathleencaldwell.attorney@gmail.com
*Attorney for Plaintiff*