IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**MARC JOSEPH HENDERSON,**

    **Plaintiff,**

v.                                  CASE NO: 2:19-2776-cv-SHM-tmp
                                       **JURY DEMANDED**

**CITY OF MEMPHIS,**
**COLONEL DARRYL SHEFFIELD**
**(in his Individual Capacity),**
**LIEUTENANT CECIL DAVIS**
**(in his Individual Capacity), and**
**LIEUTENANT GLENN BARBER**
**(in his Individual Capacity),**

    **Defendants.**

## PLAINTIFF'S AMENDED COMPLAINT

This is an action for damages for violating Plaintiff's constitutionally guaranteed rights under the United States Constitution, namely: Amendment IV (Search and Seizure); and Amendment XIV (deprivation of liberty without due process of law).

Said violations were taken under color or law by these Defendants, and/or its agents, as alleged herein.

Plaintiff relies on 42 U.S.C. §1983, which provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State...subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights, privileges

1

or immunities secured by the Constitution and laws, shall be liable to the party injured…

## I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Marc Joseph Henderson, (hereinafter "Henderson"), is an adult resident citizen of the United States, who at all relevant times has resided in Shelby County, TN.

2. Defendant, City of Memphis, is a municipality (municipal corporation) created under the laws of the State of Tennessee. Among its duties is the duty to establish and maintain a Police Department, to prescribe its duties and by ordinance to establish and fix the grades, ranks and classifications of all officers and other employees of the Police Department of the City of Memphis. The City by ordinance is empowered to designate the number of officers at the several approved ranks, as may be necessary to efficiently conduct the department. The Memphis Police Department is empowered to train, discipline and oversee the actions of its officers, including persons serving in commanding positions, including colonels, majors and lieutenants. The City may be reached with service of process by serving the Mayor, Jim Strickland, and by serving the City Attorney, Bruce McMullen.

3. Defendant, Colonel Darryl Sheffield, is sued in his individual capacity. He is at all relevant times the commanding officer of the Appling Farms (Police) Precinct, and as such has responsibilities for all personnel serving under him, including the other named Defendants and the Plaintiff. Sheffield is an adult resident citizen of Shelby County, Tennessee.

4. Defendants, Lieutenant Cecil Davis and Lieutenant Glenn Barber, are sued in their individual capacities. They were at all relevant times in supervisory positions of authority over Plaintiff. Both Davis and Barber are adult resident citizens of Shelby County, Tennessee.

5. Jurisdiction is conferred on this Court pursuant to federal question, 28 U.S.C. §1331, and §1343 (civil rights).

6. Venue is appropriate in this district under 28 U.S.C. §1391(b)(1) and (2), and (c)(2).

## FACTS

7. Plaintiff, Marc Joseph Henderson, was first employed by City of Memphis on January 3, 2011. After successfully completing his training and his probationary period, he was promoted to the position of Police Officer II. He is a fully commissioned (POST) Police Officer of the Memphis Police Department.

8. Henderson has well served the City of Memphis and its citizens.

9. During the period May to November, 2018, Plaintiff was experiencing problems in his marriage. His wife became close friends with Sheffield's wife, and as a result Sheffield intruded into Henderson's personal life, without Henderson's permission. Henderson's wife was known by Henderson to come to the precinct, where she would meet with Sheffield and pour out her concerns to him. Sheffield expressly ordered Henderson to cooperate with his wife, and to "do as she wanted" in the divorce. Sheffield suggested that Henderson might be depressed or even suicidal, which Henderson adamantly denied. Said allegation was baseless. Henderson was offended that Sheffield felt entitled to intrude on his personal life.

Sheffield even sent officers to Henderson's home on several occasions to "check on" Henderson. Henderson felt these actions were harassing and threatening, and were baseless.

10. During that same time period, Henderson's wife repeatedly threatened Henderson that she would call Sheffield's wife and get Henderson "in trouble" if Henderson did not do what she wanted.

11. On November 13, 2018, Plaintiff was working overtime on the day shift. On a break he went to his home, to use the restroom and to eat breakfast. This was allowed. His wife was angry when he appeared, and she called Sheffield's wife and complained that Henderson had come home. He still resided there. He had every right to go to his residence while on a break. There was no physical altercation.

12. At around 1:30 p.m., Plaintiff was instructed to return to the precinct, at which time he was relieved of duty "for his own good." This decision was made by Colonel Sheffield. Plaintiff was told repeatedly by Sheffield that he was not in trouble – there was nothing disciplinary facing him.

13. Plaintiff contends that unless Plaintiff was charged with some dereliction of duty, or had broken some law, or some criminal offense, Sheffield had no legal basis to relieve him from duty.

14. Plaintiff was then ordered to go to Major Able's office (in Appling Farms Precinct), where Major Able and Officer Stewart (CIT trained) tried repeatedly to convince Henderson to go to Lakeside Hospital "for his own good." Plaintiff had not exhibited any aggressive behavior. He was not depressed, or excessively angry. His behavior was appropriate under the circumstances. On Sheffield's orders, Plaintiff

was not allowed to leave the Major's office until and unless he agreed to go to Lakeside. After an hour or two, Plaintiff agreed (unwillingly). Henderson had no choice. He did not drive his car to Lakeside. Sheffield had Henderson transported by Officer Stewart in his patrol car.

15. Henderson remained at Lakeside for about three hours. No attention was being paid to him. Henderson realized he had no reason to be there. He then calmly called the precinct for a patrol car to transport him back to the precinct, where he had left his personal vehicle.

16. As the patrol car arrived at Appling Farms Precinct, the driver, Officer Holmes, told Henderson that Lieutenant Cecil Davis had instructed him to wait with Henderson outside the rear door of the Precinct. Henderson was not allowed out of the vehicle.

17. Around 6:00 p.m. (18:00) several lieutenants, including Lts. Davis and Barber, came out of the Precinct building and surrounded the patrol car in which Henderson was sitting. Henderson was instructed by Lieutenant Cecil Davis to get out of the patrol car, at which time he was told to turn around, and to put his hands behind his back. Davis then handcuffed Henderson, and placed him in the backseat of Officer Nigel Payne's patrol car. The other Lieutenants observed these actions and did nothing to stop the wrongful arrest of Henderson.

18. Henderson requested to speak to Sheffield. Sheffield came outside, and they spoke at length. Sheffield told Henderson that Henderson's refusal to accept the divorce is why he was sitting in the backseat of a patrol car, handcuffed. Sheffield said he personally made the decision to "commit" Henderson. Lts. Davis

and Barber knew or should have known that there was no legitimate reason to arrest Henderson, or to seize him, or to place him in custody.

19. Sheffield by 2018 had served as a police officer and had achieved several promotions. By 2018 he was thus commanding officer of the Appling Farms Precinct. He was trained by City of Memphis and/or the Memphis Police Department in how and when to make an arrest, why and when arrests are not appropriate, how to supervise his subordinates, including how and when (if ever) to intervene in a subordinate's personal life.

20. Sheffield by 2018 had interfered with marriage issues of other subordinates. He felt empowered to determine if an officer "needed" to go to Lakeside Hospital, a mental health facility. He felt empowered to order his subordinates to enter the dwelling place of other officers, at Sheffield's whim.

21. Sheffield, based on his actions, believed he was empowered to relieve an officer from duty without cause, even when there was no disciplinary action being taken against the officer.

22. Sheffield's actions show that he was empowered to seize one of his subordinates, without probable cause, and to hold the subordinate for any period of time.

23. Plaintiff's refusal to accept the divorce on his Wife's terms is not a legal basis for arresting Plaintiff. Plaintiff had not committed a criminal act.

24. Sheffield acted without obtaining a warrant of any kind. He has a history of similar conduct. The Memphis Police Department/City of Memphis knew or should have known of Sheffield's activities to deprive his subordinates, including

Henderson, of their federal rights under the Fourth Amendment to the U. S. Constitution.  Plaintiff contends moreover that the MPD and the City of Memphis were aware of Sheffield's actions taken against Henderson on or about November 13-14, 2018, and did nothing to stoop Sheffield.

25.    Throughout the events at the Precinct, no body cameras or in-car videos were running, in violation of MPD policy, which requires body cameras and in-car video to be initiated prior to police interaction with anyone.  This policy includes police officers who are being arrested.  Lts. Davis and Barber knew or should have known that said policy was being violated.  Sheffield knee the body camera policy was not being followed, and that the in-car video was not running, in the Payne car.

26.    The handcuffing and placing of Henderson into the patrol car is a seizure of Henderson; yet he was not being charged with any crime of any kind.  Neither had any police officer, including Sheffield or the other Defendants, observed Henderson violating any law or ordinance.  There was no warrant for his arrest.  The seizure of Henderson was baseless, arbitrary and capricious.  Henderson had not received any discipline, either oral or written, on that date.

27.    Sheffield lacked the authority to "commit" Henderson to a mental hospital.  Sheffield did not go to any Judge requesting an emergency commitment.  Sheffield is not a doctor, or psychiatrist.

28.    Sheffield ordered that Officer Payne transport Henderson to the Memphis Mental Health Institute ("MMHI") in downtown Memphis.  The transport occurred at approximately 7:30 p.m. on November 13, 2018.  The transporting officer left Henderson at the Crisis Assessment Center located at MMHI.

29. Henderson was then assessed. After evaluation, Henderson was released sometime after midnight on November 14, 2018, which was approximately five hours after arrival at MMHI. The evaluating doctors told Henderson they could not find any reasons why he had been brought there, that there was no basis for an involuntary committal.

30. This result was not good enough for Colonel Sheffield. After Henderson had returned home, several officers entered Henderson's home without his permission and knocked on his bedroom door. They had been sent by Colonel Sheffield to "check" on him. By then, the Colonel had learned that Lakeside had no reason to treat Henderson, that MMHI had found no basis for an involuntary committal, and that CIT Officer Stewart had written a lengthy memorandum finding that Henderson did not meet the criteria for an involuntary transport.

31. As a direct and proximate result of the constitutional deprivations set forth above, Henderson has been injured profoundly. His sense of personal safety at work has disappeared. He reasonably has concluded he cannot trust the Defendants named herein, who together acted in concert to deprive him of his life and liberty, and his rights to due process. He has learned that he cannot trust his commanding officers or his fellow officers. He was forced to endure a very embarrassing psychiatric evaluation for no reason, and certainly without legal authority. His reputation with the Memphis Police Department has been injured. The MPD has not taken any appropriate action to discipline or reprimand those employees responsible, namely the individual Defendants named herein. His marriage has been damaged by the actions of Colonel Sheffield. His personal

relationships have been invaded. His privacy interests have been invaded. He cannot even peacefully sleep in his own bed, without the police intruding into his home, without his permission and without a warrant. He has lost pay.

32. The actions of Colonel Sheffield and Lieutenants Cecil Davis and Glenn Barber have deprived Plaintiff of his constitutional rights, under Color of Law. They are responsible for their own actions to the extent that they acted beyond their authority.

33. The City of Memphis knew or should have known that Col. Sheffield and his Lts. (Davis and Barber) had violated Plaintiff's constitutional rights, and arrested him without legal basis, had forced him to submit to unneeded psychological assessments, had tried to "commit" Henderson to the Memphis Mental Health Institute; and had violated numerous City policies as set forth herein to accomplish their wrongful goals. The City had inadequate policies and inadequate training or supervision, particularly of persons in high rank of command. The City/MPD has a custom of tolerance or acquielsence of federal rights violations. The City had a duty to train, discipline and oversee the actions of its police officers, including Col. Sheffield, and in the instant case failed to investigate and/or to correct the egregious misconduct of Sheffield, Davis, and Barber.

### IV.  CAUSES OF ACTION

34. Plaintiff incorporates paragraphs 1 through 33 as if copied in words and figures.

35. Plaintiff states a claim against Defendants pursuant to 42 U.S.C. §1983, on the facts and allegations set forth herein.

## V. **PRAYER FOR RELIEF**

Plaintiff on the facts stated asserts that he should be granted relief as follows:

1. That the Court grant an award of compensatory damages not to exceed three Million Dollars.

2. That the Court enter a declaratory judgment that Defendants violated 42 U.S.C. §1983 as asserted by Plaintiff.

3. Award Plaintiff his reasonable attorney's fees and costs of the cause.

4. All other relief, legal and equitable to which Plaintiff may be entitled under the premises.

4. Jury trial demanded.

          Respectfully submitted,

          KATHLEEN CALDWELL, PLLC

          *s/Kathleen L. Caldwell, #9916*
          2670 Union Avenue Ext., Suite 110
          Memphis, TN 38112
          Telephone: (901) 458-4035
          Facsimile: (901) 458-4037
          kathleencaldwell.attorney@gmail.com
          *Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been electronically filed and electronically sent to the following:

**Arthur E. Quinn**
**Attorney for Lieutenant Glenn Barber and Cecil Davis**
**Law Office of Arthur E. Quinn**
**50 North Front Street, Suite 800**
**Memphis, TN 38103**

**Robert D. Meyers**
**Aurelia V. McBride**
**Attorneys for City of Memphis**
**6000 Poplar Avenue, Suite 400**
**Memphis, TN 38119**

**Florence M. Johnson**
**Johnson and Johnson, PLLC**
**Attorney for Colonel Darryl Sheffield**
**1407 Union Avenue, Suite 1002**
**Memphis, TN 38104**

This 25th day of March, 2020.

*s/Kathleen L. Caldwell*
*Certifying Attorney*