```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

|  |  |
|---|---|
| MARC JOSEPH HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | No. 2:19-cv-2776-SHM-tmp |
| ) | |
| CITY OF MEMPHIS; COLONEL ) | Jury Demanded |
| DARRELL SHEFFIELD (in his ) | |
| individual capacity), ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING MOTION TO AMEND, DENYING IN PART AND GRANTING IN PART CITY OF MEMPHIS'S MOTION TO DISMISS, AND DENYING COLONEL DARRELL SHEFFIELD'S MOTION TO DISMISS**

Marc Joseph Henderson ("Plaintiff") seeks relief for violations of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983. (D.E. No. 43.) Before the Court are three motions. The first is Plaintiff's second motion to amend (the "Motion to Amend"). (D.E. No. 62.) The second is Defendant City of Memphis's (the "City") motion to dismiss. (D.E. No. 45.) The third is Defendant Colonel Darrell Sheffield's ("Sheffield") motion to dismiss. (D.E. No. 48.) The motions are ripe for consideration. (See D.E. Nos. 55, 56, 57, 60, 63.) For the following reasons, the Motion to Amend is DENIED, the City's motion to dismiss is DENIED IN PART and GRANTED IN PART, and Sheffield's motion to dismiss is DENIED.

**I.   Background**

On November 12, 2019, Plaintiff filed his Complaint against Defendants the City, Sheffield, Lieutenant Cecil Davis, and Lieutenant Glenn Barber seeking relief under § 1983 for violations of his Fourth and Fourteenth Amendment rights. (D.E. No. 1.) The Amended Complaint was filed on March 25, 2020. (D.E. No. 43.) The Amended Complaint asserts a failure to train or supervise claim against the City. (Id. ¶¶ 2, 19, 24, 33.) The Amended Complaint asserts a claim for unconstitutional detention of Plaintiff for a mental health assessment against Sheffield. (Id. ¶¶ 9, 14, 16-18, 23-24, 26-28, 32-33.) The Amended Complaint makes other factual allegations that do not clearly state claims against either Defendant. (See, e.g., id. ¶¶ 12-13, 25.) On August 7, 2020, the Court entered an Order granting a stipulation of dismissal dismissing Plaintiff's claims against Defendants Davis and Barber. (D.E. No. 71.) For purposes of the motions to dismiss, the facts are taken from the Amended Complaint.

Plaintiff has been employed by the City as a police officer since 2011. (Id. ¶ 7.) At all relevant times, Sheffield was Plaintiff's commanding officer at the Appling Farms Precinct. (Id. ¶ 3.)

Between May and November 2018, Plaintiff was experiencing marital problems. (Id. ¶ 9.) Sheffield became interested in Plaintiff's marriage and ordered Plaintiff to do what his wife

2

wanted in their divorce. (Id.) Sheffield had officers check on Plaintiff on several occasions because Sheffield had "baseless" concerns that Plaintiff was depressed or suicidal. (Id.)

On November 13, 2018, Sheffield relieved Plaintiff from duty "for his own good." (Id. ¶ 12.) Plaintiff was coerced into going to Lakeside Hospital, also "for his own good." (Id. ¶ 14.)

After three hours without attention at Lakeside Hospital, Plaintiff requested a patrol car to take him back to the precinct. (Id. ¶ 15.) Once the patrol car with Plaintiff had arrived at the precinct, Plaintiff was not allowed out of the vehicle. (Id. ¶ 16.)

At about 6:00 PM, Plaintiff was instructed to get out of the car, turn around, and put his hands behind his back. (Id. ¶ 17.) Plaintiff was handcuffed. (Id.) After Plaintiff asked to speak with Sheffield, Sheffield informed Plaintiff that Sheffield had decided to have Plaintiff committed. (Id. ¶ 18.)

At about 7:30 PM, Plaintiff was transported to Memphis Mental Health Institute ("MMHI"). (Id. ¶ 28.) After an assessment, Plaintiff was released some time after midnight on November 14, 2018, because the doctors at MMHI had found no reason for an involuntary committal. (Id. ¶ 29.)

The Amended Complaint alleges that Sheffield has a history of similar conduct and that the City knew or should have known about that conduct. (Id. ¶ 24.)

3

On April 7, 2020, the City filed its motion to dismiss arguing that the Amended Complaint did not contain sufficient factual allegations to state a § 1983 claim against the City. (D.E. No. 45.)

On April 8, 2020, Sheffield filed his motion to dismiss arguing that he is entitled to qualified immunity. (D.E. No. 48.)

On June 18, 2020, Plaintiff filed the Motion to Amend seeking to sue Sheffield in his official capacity as well as his individual capacity. (D.E. No. 62.)

**II.   Jurisdiction**

The Court has federal question jurisdiction over Plaintiff's § 1983 claims under 28 U.S.C. § 1331. Plaintiff's § 1983 claims arise under the laws of the United States.

**III. Standard of Review**

Rule 12(b)(6) provides for dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss

meritless cases that would waste judicial resources and result in unnecessary discovery. See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

"To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face." Cooper Butt ex rel. Q.T.R. v. Barr, 954 F.3d 901, 904 (6th Cir. 2020) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The court considers the plaintiff's complaint in the light most favorable to the plaintiff. Ryan v. Blackwell, 979 F.3d 519, 525 (6th Cir. 2020) (citing Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001)). The court accepts as true all factual allegations but does not accept legal conclusions or unwarranted factual inferences as true. Theile v. Michigan, 891 F.3d 240, 243 (6th Cir. 2018). "The plaintiff must present a facially plausible complaint asserting more than bare legal conclusions." Id. (citing Twombly, 550 U.S. at 556; Iqbal, 556 U.S. at 677-678).

**IV. Analysis**

   **A.   The Motion to Amend**

On June 18, 2020, Plaintiff filed the Motion to Amend. (D.E. No. 62.) The proposed second amendment would name Sheffield in his official capacity as well as his individual capacity. (Id. at 274.)

Motions to amend are to be granted "freely" "when justice so requires." Fed.R.Civ.P. 15(a)(2). There is an exception to this liberal standard when the amendment would be futile. Parchman v. SLM Corp., 896 F.3d 728, 737-38 (6th Cir. 2018) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.").

The proposed amendment to name Sheffield in his official capacity would be redundant and therefore futile. The City is already a Defendant. Suit against an individual defendant in that defendant's official capacity is identical to suit against the governmental entity. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Where the governmental entity is already a defendant, suit against a government officer in that officer's official capacity is redundant. Courts routinely dismiss claims against government officers in their official capacity in those circumstances. See Doe v. Claiborne Cty., Tenn., 103 F.3d 495, 509 (6th Cir. 1996)

6

(affirming district court's dismissal of official-capacity suits); Brooks v. Skinner, 139 F. Supp. 3d 869, 890 (S.D. Ohio 2015) ("[W]hen a § 1983 complaint asserts a claim against a government entity and a government official in her official capacity, federal courts will dismiss the official-capacity claim.").

Amendment would be futile. The Motion to Amend is DENIED.

**B.  The City's Motion to Dismiss**

A municipality may be liable under § 1983 for constitutional violations caused by the municipality's "policy or custom," where that "official policy" is the "moving force" behind the constitutional injury. Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978). "To set forth a cognizable § 1983 claim against a municipality, a plaintiff must allege that (1) agents of the municipality, while acting under color of state law, (2) violated the plaintiff's constitutional rights, and (3) that a municipal policy or policy of inaction was the moving force behind the violation." Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis, 361 F.3d 898, 902 (6th Cir. 2004).

Plaintiff alleges that the City failed to train or supervise Sheffield to avoid violating his subordinates' constitutional rights. A failure to train or supervise employees adequately can be an offending policy or custom if the failure to train or

7

supervise amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist., 455 F.3d 690, 700 (6th Cir. 2006)). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such a failure under § 1983." Canton, 489 U.S. at 389; see also Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) ("We hold that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy"). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick, 563 U.S.

8

at 61 (citing Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 407 (1997)).

The City contends that the Amended Complaint does not allege sufficient facts to support a conclusion that the training Sheffield received was inadequate. (D.E. No. 45-1 at 185.) The factual allegations in the Amended Complaint fail to support Plaintiff's allegation that "[t]he City had inadequate policies and inadequate training . . . particularly of persons in high rank of command." (D.E. No. 43 ¶ 33.) The Amended Complaint alleges that the City of Memphis and/or the Memphis Police Department trained Sheffield in "how and when to make an arrest, why and when arrests are not appropriate, how to supervise his subordinates, including how and when (if ever) to intervene in a subordinate's personal life." (Id. ¶ 19.) The Amended Complaint does not list deficiencies in Sheffield's training. (See D.E. No. 45-1 at 184-85.) The Amended Complaint alleges that Sheffield "felt empowered" to or had previously: interfered in the marriages of subordinates, ordered officers to enter subordinates' homes, relieved officers from duty without cause, determined that subordinates needed to receive mental health treatment, and seized and held subordinates without probable cause for an indefinite period. (Id. ¶¶ 20-22.) Those allegations state that Sheffield may have acted outside the confines of his training, but the allegations fail to state that the training he

9

allegedly received was inadequate. See Birgs v. City of Memphis, 686 F. Supp. 2d 776, 780-81 (W.D. Tenn. 2010) (quoting Twombly, 550 U.S. at 555) (dismissing failure to train claim because, where the complaint stated that "Defendant . . . failed to properly train and instruct the individual Defendants in the proper use of force," "the allegations [were] nothing more than 'a formulaic recitation of the elements of a cause of action'"). The City's motion to dismiss Plaintiff's failure to train claim is GRANTED.

The Amended Complaint states sufficient allegations to support Plaintiff's "inadequate . . . supervision" claim. (Id. ¶ 33.) The Amended Complaint alleges that Sheffield had a history of conduct like the allegedly unconstitutional mental health detention of Plaintiff and the surrounding conduct, and that the City knew or should have known about Sheffield's pattern of conduct. (Id. ¶ 24.) The Amended Complaint alleges that the City knew about Sheffield's actions on November 13-14, 2018, did nothing to stop Sheffield at that time, and has taken no action to "investigate and/or correct" Sheffield for the alleged incidents on those dates. (Id. ¶¶ 24, 33); see Taylor v. Michigan Dep't of Corr., 69 F.3d 76, 81 (6th Cir. 1995) ("[Defendant's] own deposition showed that he was aware of and at least acquiesced in the conduct of his subordinates"); cf. Hershberger v. Town of Collierville, No. 14-2153, 2014 WL 6815189, at *9

10

(W.D. Tenn. Dec. 2, 2014) (dismissing failure to supervise claim where supervisor was not involved in unconstitutional conduct and there were no facts alleged that demonstrated supervisor "knowingly acquiesced in the unconstitutional acts"). Plaintiff's allegations are sufficient to support a claim that the City failed to supervise Sheffield.

The City argues that Plaintiff's Amended Complaint lacks sufficient factual allegations to satisfy the deliberate indifference element of his failure to supervise claim. The Sixth Circuit recognizes two ways to establish deliberate indifference. Ellis ex rel. Pendergrass, 455 F.3d at 700. "'One is failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction.'" Id. at 700-01. (quoting Brown v. Shaner, 172 F.3d 927, 931 (6th Cir. 1999)) ("In City of Canton, for example, the Supreme Court indicated that a city could be deliberately indifferent by failing to train its police officers in the use of deadly force because it is obvious that the officers will need to use such force when they are armed with guns and required to arrest fleeing felons.") "'A second type of . . . deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers.'" Id. at 701 (quoting Brown, 172 F.3d at 931).

Plaintiff argues that, because "[i]t is particularly abhorrent for the City to allow a commanding officer to intrude on the marital issues of those officers under his command," the City must have displayed deliberate indifference. (Id.) That conclusion, even if accepted, does not establish either of the ways to make out deliberate indifference. It does not demonstrate that a commanding officer's interfering in a subordinate's marriage is a "foreseeable consequence" that must be addressed by supervision. Ellis ex rel. Pendergrass, 455 F.3d at 700. It does not demonstrate that the City ignored complaints of commanding officers' interfering in subordinates' marriages. See id. at 701.

Plaintiff's Amended Complaint, however, does contain sufficient factual allegations to state the deliberate indifference element of his claim that the City failed to supervise Sheffield. Plaintiff alleges that the City was deliberately indifferent because "it is clear that [Sheffield] had conducted himself similarly on other occasions." (D.E. No. 55-1 at 238.) Plaintiff alleges that the City knew or should have known that Sheffield had conducted himself similarly on other occasions. (D.E. No. 43 ¶ 24.) That allegation is analogous to a municipality's ignoring complaints of unconstitutional behavior because it states that the City was or should have been

on notice of the unconstitutional conduct. See Ellis ex rel. Pendergrass, 455 F.3d at 701.

In the Amended Complaint Plaintiff alleges facts that support his claim. Plaintiff alleges that "Sheffield had a history of similar conduct" to the conduct surrounding his allegedly illegal arrest of Plaintiff. (D.E. No. 43 ¶ 24.) Plaintiff alleges that the "City knew or should have known of Sheffield's actions to deprive his subordinates, including Henderson, of their federal rights under the Fourth Amendment to the U.S. Constitution." (Id.) Those allegations do not merely state legal conclusions. They state that Sheffield engaged in a pattern of behavior that violated his subordinates' constitutional rights and that the City knew or should have known about that behavior. Although the allegations lack additional detail, detailed factual allegations are not required to withstand a motion to dismiss. See Twombly, 550 U.S. at 555 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations").

The Amended Complaint adequately states a failure to supervise claim against the City. The City's motion to dismiss that claim is DENIED. To the extent the Amended Complaint attempts to state any other claims against the City based on a Monell theory of liability, the City's argument that those claims are based on "broad assertions" is well-taken. (see D.E. No. 45-

13

1 at 186.) The City's motion to dismiss any claims other than the failure to supervise claim, including the inadequately pled failure to train claim, is GRANTED. Those claims are DISMISSED.

**C.  Sheffield's Motion to Dismiss**

Sheffield argues that the claim for an unconstitutional mental health detention of Plaintiff should be dismissed because Sheffield is entitled to qualified immunity. (D.E. No. 48-1 at 213.) "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). The right in question must be specifically defined, particularly in the Fourth Amendment context. Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018). Although the Supreme Court's "'caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (quoting White v. Pauly, 137 S. Ct. 548, 551 (2017) (per curiam)).

Plaintiff alleges facts in the Amended Complaint establishing that his Fourth Amendment rights were violated. Plaintiff alleges that he was handcuffed and placed in the back of a patrol car without probable cause or a warrant and taken

14

for a mental health evaluation. (Id. ¶¶ 17, 22, 24, 26, 28.) The Fourth Amendment provides protections against such mental health seizures or arrests without probable cause that "the person seized poses a danger to himself or others." See Fisher v. Harden, 398 F.3d 837, 842-43 (6th Cir. 2005) (citing Monday v. Oullette, 118 F.3d 1099, 1102 (6th Cir. 1997)).

Sheffield does not contest that an arrest was made, but argues that such a warrantless arrest was permitted under Tennessee law. (D.E. No. 48-1 at 214.) Sheffield cites Tenn. Code Ann. § 33-6-401, which permits a mental health seizure or arrest if the "person has a mental illness or serious emotional disturbance" and "the person poses an immediate substantial likelihood of serious harm under § 33-6-501 because of the mental illness or serious emotional disturbance . . . ." Tenn. Code Ann. § 33-6-401. Section 33-6-501 provides:

> IF AND ONLY IF
>
> (1)(A) a person has threatened or attempted suicide or to inflict serious bodily harm on the person, OR
>
> (B) the person has threatened or attempted homicide or other violent behavior, OR
>
> (C) the person has placed others in reasonable fear of violent behavior and serious physical harm to them, OR
>
> (D) the person is unable to avoid severe impairment or injury from specific risks, AND

15

>    (2) there is a substantial likelihood that the harm will occur unless the person is placed under involuntary treatment,
>
> THEN
>
>    (3) the person poses a "substantial likelihood of serious harm" for purposes of this title.

Tenn. Code Ann. § 33-6-501.

Tennessee's statutory scheme governing warrantless mental health detentions "appears to be at least as stringent as federal law." Reeners v. Troup, No. 3:15-cv-00625, 2020 WL 409746, at *16 (M.D. Tenn. Jan. 23, 2020). In Reeners, the court concluded that, even given Tennessee's statutory scheme, the officers involved in a mental health seizure or arrest required probable cause that the persons seized posed a danger to themselves or others. Id. at *20-*21.

The Amended Complaint adequately alleges that Sheffield violated Plaintiff's Fourth Amendment rights. Reliance on Tennessee's warrantless detention statute requires probable cause that Plaintiff was a danger to himself or others. Sheffield argues that the Amended Complaint establishes that Plaintiff was having marital problems that were leading to a divorce. (D.E. No. 48-1 at 214.) That fact does not establish that Plaintiff posed a danger to himself or others or that Plaintiff was mentally ill or having a serious mental disturbance. Cf. Reeners,

16

2020 WL 409746, at *17-*21 (detailing the facts of case where even combination of delusions by the person in question and his harassment of the police did not create probable cause). The allegations in the Amended Complaint demonstrate that Sheffield violated Plaintiff's Fourth Amendment rights.

The right to be free from a mental health seizure or arrest absent probable cause to believe the person is a danger to himself or others was clearly established at the time of Plaintiff's arrest. Monday, 118 F.3d at 1102 ("The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others."); Fisher, 398 F.3d at 843-49 (applying the Monday standard to facts of case and holding that "[i]t is clearly established that an officer may not [e]ffect a mental health seizure without probable cause"); Reeners, 2020 WL 409746, at *21 ("[T]he plaintiff had a clearly established right not to be subjected to a mental health detention in the absence of probable cause to believe he posed a substantial risk of imminent harm to himself or others"); Goodwin v. Hamilton Cty., Tenn., No. 1:05-cv-71, 2008 WL 11452106, at *13 (E.D. Tenn. Mar. 31, 2008) ("[T]he right to be free from seizure in the context of a mental health seizure on less than probable cause was clearly established at the time of this incident as reflected in the 1997 case of Monday v.

17

[O]ullette, 118 F.3d at 1102."). The caselaw in this circuit requiring probable cause prior to a mental health detention dates from 1997. Plaintiff's right to be free from seizure was clearly established at the time of the events alleged in the Amended Complaint.

Sheffield is not entitled to qualified immunity on the § 1983 claim against him. His motion to dismiss is DENIED.

### V. Conclusion

For the foregoing reasons, the Motion to Amend is DENIED. The City's motion to dismiss is DENIED to the extent that it seeks dismissal of Plaintiff's failure to supervise claim and GRANTED as to all other § 1983 claims against the City. Sheffield's motion to dismiss is DENIED.

SO ORDERED this __23d__ day of March, 2021.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE