```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

|  |  |
|---|---|
| MARC JOSEPH HENDERSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:19-cv-2776-SHM-tmp |
| CITY OF MEMPHIS and COLONEL DARRELL SHEFFIELD (in his individual capacity), | ) Jury Demanded |
| Defendants. | ) |

**ORDER GRANTING CITY OF MEMPHIS'S MOTION FOR SUMMARY JUDGEMENT AND GRANTING IN PART AND DENYING IN PART COLONEL DARRELL SHEFFIELD'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Marc Joseph Henderson ("Henderson") sues Defendants City of Memphis (the "City") and Colonel Darrell Sheffield ("Sheffield") under 42 U.S.C. § 1983 alleging violations of Henderson's Fourth and Fourteenth Amendment rights. (D.E. No. 43.) Before the Court are two motions. The first is the City's motion for summary judgment. (D.E. No. 101.) The second is Sheffield's motion for summary judgment. (D.E. No. 106.) Both motions are ripe for consideration. (See D.E. Nos. 114, 115, 125, 129.) The City's motion for summary judgment is GRANTED. Sheffield's motion for summary judgment is GRANTED IN PART and DENIED IN PART.

**I.  Background**

On November 12, 2019, Henderson filed his Complaint against Defendants the City, Sheffield, Lieutenant Cecil Davis, and Lieutenant Glenn Barber seeking relief under § 1983 for violations of his Fourth and Fourteenth Amendment rights. (D.E. No. 1.) The Amended Complaint was filed on March 25, 2020. (D.E. No. 43.) The Amended Complaint asserts a failure to supervise claim against the City. (Id. ¶¶ 2, 19, 24, 33; see D.E. No. 119 at 1080.) It also asserts a claim against Sheffield for the unconstitutional detention of Henderson for a mental health assessment. (D.E. No. 43 ¶¶ 9, 14, 16-18, 23-24, 26-28, 32-33; D.E. No. 119 at 1088.) On August 7, 2020, the Court entered an Order dismissing Henderson's claims against Defendants Davis and Barber. (D.E. No. 71.)

Henderson has been employed by the City as a police officer since 2011. (Pl.'s Resp. to Def. Statement of Undisp. Material Facts, D.E. No. 114-1 at 630.) At all relevant times, Sheffield was Henderson's commanding officer at the Appling Farms Precinct. (Id. at 631.)

Sheffield knew that Henderson was having marital problems before Henderson was transferred to Appling Farms. (D.E. No. 106-8 at 572-76.) In April 2018, Henderson had been reported as an officer in crisis and had voluntarily gone to Lakeside Hospital ("Lakeside") for mental health treatment. (Id.)

2

In November 2018, Henderson was still experiencing marital problems. (Id.) Sheffield became interested in Henderson's marriage and ordered Henderson to do what his wife wanted in their divorce. (Pl.'s Statement of Add. Facts, D.E. No. 114-2 at 644.)

On November 13, 2018, Henderson was working overtime and took a break to eat breakfast and use the restroom at the home he shared with his wife. (D.E. No. 114-1 at 631.) His wife told Sheffield that there was an altercation, and Sheffield ordered Crisis Intervention Team ("CIT") trained Officer Samuel Stewart to investigate. (D.E. No. 114-1 at 632; D.E. No. 114-2 at 646.) Officer Stewart found Henderson to be calm. Although he was apparently depressed, Officer Stewart found that Henderson did not meet the criteria for an emergency commitment. (Stewart Dep., D.E. No. 114-4 at 718-20.)

Officer Stewart, recognizing that Sheffield was adamant that something like an emergency commitment be done, attempted to convince Henderson to go to Lakeside voluntarily for an evaluation. (Id. at 720-21.) There is a dispute about whether Henderson agreed to go to Lakeside voluntarily or whether Sheffield coerced him. (D.E. No. 114-1 at 632-33.) Henderson's badge and gun were taken from him, relieving him of duty. (D.E. No. 114-4 at 722.) Officer Stewart was shocked that Henderson was relieved of duty. (Id. at 723.) Officer Stewart took

3

Henderson to Lakeside. (Id. at 722.) After several hours without attention at Lakeside, Henderson requested a patrol car to take him to the Appling Farms Precinct. (D.E. No. 114-1 at 632; D.E. No. 114-2 at 647.)

When Henderson arrived at the precinct, several officers surrounded the patrol car. (City's Resp. to Pl.'s Statement of Add. Facts, D.E. No. 128 at 1157-58.) Henderson was detained. (Id.) The City admits that Sheffield told Henderson that Sheffield was having Henderson committed because Henderson refused to accept the divorce, but Sheffield denies it. (Id.)

Officer Nigel Payne transported Henderson to Memphis Mental Health Institute ("MMHI"). (Id. at 1159.) Henderson was evaluated there by Dimonah Sims ("Sims"). (Id.) Sims spoke to Henderson and Henderson's wife. (Id.) Henderson did not meet the criteria for involuntary inpatient treatment. (Id.) He was discharged from MMHI. (Id.)

On March 23, 2021, the Court ordered that all claims against the City, except the failure to supervise claim, be dismissed (the "Order"). (D.E. No. 119 at 1083-84.) The Order did not dismiss any claims against Sheffield. (Id. at 1088.)

On December 31, 2020, the City filed its motion for summary judgment. (D.E. No. 101.) The City argues that there was no constitutional violation because there was probable cause for the detention and that, even if there was a violation, the City's

4

policies were not the moving force behind the violation. (Id. at 379-80.) Henderson argues that his rights were violated and that the City's failure to supervise Sheffield, based on his pattern of similar conduct and the incident in question, makes the City liable for the violation of Henderson's rights. (D.E. No. 114 at 616-17.)

On January 22, 2021, Sheffield filed his motion for summary judgment. (D.E. No. 106.) He argues that he did not violate Henderson's rights because he had probable cause for the detention and that he is entitled to qualified immunity from suit. (D.E. No. 106-1 at 492-93.) Henderson argues that there are material disputed facts and that a reasonable jury could find there was no probable cause for Henderson's detention and Sheffield's actions were so egregious he is not entitled to qualified immunity. (D.E. No. 115 at 844-45.)

## II. Jurisdiction

The Court has federal question jurisdiction over Henderson's § 1983 claims under 28 U.S.C. § 1331. His § 1983 claims arise under the laws of the United States.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(a). "[T]he moving party is entitled to summary judgment when the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" George v. Youngstown State University, 966 F.3d 446, 458 (6th Cir. 2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)).

The non-moving party has the duty to point out specific evidence in the record sufficient to justify a jury decision in his favor. See Fed.R.Civ.P. 56(c)(1); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed.R.Civ.P. 56(c). There is a genuine dispute for trial if the evidence is "'such that a reasonable jury could return a verdict for the nonmoving party.'" See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[I]n order to survive a summary judgment motion, the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**IV. Analysis**

    **A.   The City's Motion for Summary Judgment**

A municipality may be liable under § 1983 for constitutional violations caused by the municipality's "policy or custom," where that "official policy" is the "moving force" behind the constitutional injury. Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978). "To set forth a cognizable § 1983 claim against a municipality, a plaintiff must allege that (1) agents of the municipality, while acting under color of state law, (2) violated the plaintiff's constitutional rights, and (3) that a municipal policy or policy of inaction was the moving force behind the violation." Memphis, Tenn. Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis, 361 F.3d 898, 902 (6th Cir. 2004).

    **1.   Fourth Amendment Claim**

Henderson claims that the City failed to supervise Sheffield to keep him from violating his subordinates' constitutional rights. A failure to supervise employees adequately can be an

7

offending policy or custom if the failure to supervise amounts to "'deliberate indifference to the rights of persons with whom the [unsupervised employees] come into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist., 455 F.3d 690, 700 (6th Cir. 2006)). "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986).

Henderson could show deliberate indifference to establish a failure to supervise claim if the City had failed to respond to "'repeated complaints of constitutional violations by its officers.'" Ellis ex rel. Pendergrass, 455 F.3d at 701 (quoting Brown v. Shaner, 172 F.3d 927, 931 (6th Cir. 1999)). In the Order, the Court said Henderson's allegation that the City knew or should have known that Sheffield had a history of interfering

8

in the personal lives of his subordinates and violating his subordinates' Fourth Amendment rights was "analogous to a municipality's ignoring complaints of unconstitutional behavior because it states that the City was or should have been on notice of the unconstitutional conduct." (D.E. No. 119 at 1082-83.)

The City argues that Henderson cannot establish that Sheffield had a history of similar conduct and cannot prove that the City knew or should have known that Sheffield had a history of similar conduct. (D.E. No. 129 at 1165.) Henderson has not shown that Sheffield had a history of similar conduct or that the City knew about that history.

Henderson cites two incidents to establish Sheffield's pattern of similar conduct. (D.E. No. 114 at 625-26.) The first was in 1990 when Sheffield fired his weapon at a vehicle without probable cause. (Id. at 626; D.E. No. 114-3 at 650-52.) The second was Sheffield's interference in Officer Duall Griffin's marriage. (D.E. No. 114 at 625; D.E. No. 114-4 at 732-33.)

The two incidents do not demonstrate that there was a pattern of similar conduct that the City ignored. Two incidents over an almost thirty-year period do not create a pattern without additional evidence that two was an excessive number of incidents. Ellis ex rel. Pendergrass, 455 F.3d at 701 ("To establish deliberate indifference through these reports, Pendergrass would have had to allege and put on some evidence

9

that two incidents of abuse over two years is an excessive number.").

Even if two incidents constituted a pattern that indicated deliberate indifference, the incidents were not similar. To be similar, Sheffield must have interfered in a subordinate's personal life and must have acted without probable cause. Firing a weapon without probable cause during a traffic stop is not similar to interfering in a subordinate's personal life and requiring a mental health detention of that subordinate. (See D.E. No. 129 at 1165.) Interfering in a subordinate's marriage without a subsequent mental health detention of that subordinate does not demonstrate a pattern of violating a subordinate's Fourth Amendment rights. There was no action without probable cause in the prior marriage incident. The conduct in these incidents was not similar.

For the City to have been put on notice of a pattern of rights violations, the City must have been aware of the violations. Although the City was aware of the shooting without probable cause, (D.E. No. 114-3 at 650-52), Henderson provides no evidence that the City was aware of Sheffield's interference in Officer Duall Griffin's marriage. (See D.E. No. 114-4 at 732-33.) That conduct was not similar, and the City did not know about it.

10

Henderson argues that a failure to supervise claim can be established by a single incident of police misconduct where that incident is not investigated and no one is punished. (D.E. No. 114 at 624.) Under those circumstances, a government entity might be said to have ratified the unconstitutional conduct. See Leach v. Shelby Cty. Sheriff, 891 F.2d 1241, 1248 (6th Cir. 1989) ("[T]he district court concluded that '[t]he record reflects that Sheriff Barksdale took no action to correct the situation nor to discipline [the employee responsible] for the mistreatment.' Thus, like Marchese, the Sheriff here ratified the unconstitutional acts." (alterations in original)); Marchese v. Lucas, 758 F.2d 181, 188 (6th Cir. 1985) (holding that, where an assault by multiple officers on a prisoner did "not engender either serious investigation to discover the perpetrators or official sanctions against their conduct," the Sheriff had ratified the illegal acts of the unidentified officers).

Leach is distinguishable because there were multiple incidents that would have put the county on notice of the unconstitutional conduct. Leach, 891 F.2d at 1248 ("Given the district court's finding of deliberate indifference by the Sheriff in that at least 14 other paraplegics had received similar deplorable treatment, it is fair to say that the need for more adequate supervision was so obvious and the likelihood that the inadequacy would result in the violation of

11

constitutional rights was so great that the County as an entity can be held liable here for the extent of Leach's determined damages."). As discussed above, Henderson has been unable to show that Sheffield engaged in a pattern of violating the constitutional rights of his subordinates.

Marchese is distinguishable because the Sheriff failed to investigate and punish the unconstitutional conduct, and an active coverup ratified that conduct. Marchese, 758 F.2d at 187 ("Not only do the facts show that there was official toleration, (if not complicity in instigation) of the midnight assault on the part of the command officers on duty at the station house that night; but there was also subsequent concealment followed by a complete failure to initiate and conduct any meaningful investigation on the part of the Sheriff himself."). The events in this case were reported to superiors. There was no attempt at a coverup that could be said to ratify unconstitutional conduct. (D.E. No. 115-1 at 860.)

Henderson's Fourth Amendment claim against the City is DISMISSED.

### 2. Fourteenth Amendment Claim

The City argues that Henderson's Fourteenth Amendment claim should be dismissed on summary judgment because his claim is properly analyzed under the Fourth Amendment. (D.E. No. 101-1 at 384.) The City is correct. United States v. Lanier, 520 U.S.

12

259, 272 n.7 (1997) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)) ("Graham simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."); Alexander v. Beale Street Blues Co., 108 F. Supp. 2d 934, 940-41 (W.D. Tenn. 1999) ("All of plaintiffs' allegations share the common nucleus that they are based on the officers' alleged conduct in seizing Alexander and their failure to provide medical attention during the seizure. Such claims are more appropriately analyzed under the reasonableness standard of the Fourth Amendment rather than under a substantive due process approach."). Henderson's claim must be analyzed under the Fourth Amendment and not the Fourteenth Amendment. Henderson's Fourteenth Amendment claim against the City is DISMISSED.

Henderson fails to establish that the City is liable for any rights violations. The City's motion for summary judgment on Henderson's Fourth Amendment failure to supervise claim is GRANTED. That claim is DISMISSED. The City's motion for summary judgment on Henderson's Fourteenth Amendment claim is GRANTED. That claim is also DISMISSED.

### B.   Sheffield's Motion for Summary Judgment

Sheffield argues that he did not violate Henderson's rights because Sheffield acted with probable cause and that, even if Henderson's rights were violated, Sheffield is shielded from suit by qualified immunity if his belief that there was probable cause was reasonable. (D.E. No. 106-1 at 492-93); see Malley v. Briggs, 475 U.S. 335, 344-45 (1986) ("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of immunity be lost." (internal citation omitted)). "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" Dist. of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). Because the Court has decided that the right to be free from a mental health detention absent probable cause was clearly established at the time of Henderson's detention, (D.E. No. 119 at 1087), both of Sheffield's arguments depend on the probable cause determination and whether Sheffield's determination was reasonable.

14

Henderson's Fourteenth Amendment claim against Sheffield must be DISMISSED for the reasons stated above.[1]

Henderson's Fourth Amendment claim against Sheffield presents a jury question. "'[T]he existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible.'" Wilson v. Morgan, 477 F.3d 326, 334 (6th Cir. 2007) (quoting Gardenhire v. Schubert, 205 F.3d 303, 315 (6th Cir. 2000)) (alterations in original). Henderson raises questions of material fact sufficient to demonstrate that more than one reasonable determination is possible about whether there was probable cause that Henderson was a danger to himself or others and whether Sheffield reasonably concluded there was probable cause. See Malley, 475 U.S. at 344-45; Monday v. Oullette, 118 F. 3d 1099, 1102 (6th Cir. 1997).

Sheffield argues that "[t]he incidents preceding Henderson'[s] detainment and transport to MMHI, Henderson'[s] irrationality at the time of the detainment and transport, and the conclusions of the medical professionals that Henderson did need to be involuntarily committed together demonstrate that

---

[1] Sheffield does not argue that Henderson's Fourteenth Amendment claim should be dismissed on the ground that it must be analyzed under the Fourth Amendment. The Court has decided that Henderson's Fourteenth Amendment claim against the City must be dismissed for that reason. Henderson's Fourteenth Amendment claim against Sheffield must also be dismissed for that reason.

15

probable cause was present." (D.E. No. 106-1 at 493.) Henderson presents evidence that creates a jury question about each of Sheffield's arguments.

The most relevant incident before Henderson was detained occurred at his home.[2] It was investigated by a trained CIT officer, Officer Stewart. Officer Stewart found that Henderson did not meet the criteria for an emergency commitment. Stewart was shocked that Henderson was relieved of duty. Stewart's determination was made only hours before Henderson was detained. Stewart's conclusion speaks to Henderson's mental state at the time it was made and to Henderson's mental state when he was detained. A reasonable jury could conclude that there was no probable cause and that Sheffield's probable cause determination was unreasonable based on his disagreement with Stewart.

Sheffield argues that Henderson had the means to harm himself because he had his service weapon. (D.E. No. 106-1 at 490, 496.) Officer Stewart testified, however, that Henderson's service weapon was taken from him before they went to Lakeside.

---

[2] That Sheffield knew Henderson had been reported as an officer in crisis seven months earlier may have played a role in Sheffield's evaluation of probable cause for the detention. However, the events of the day in question are more relevant to whether there was probable cause for a detention because probable cause would be based primarily on Henderson's mental state at the time. Otherwise, Sheffield could have detained Henderson at any point in the seven months between April and November 2018. Sheffield did not do so.

Henderson's possession of his service weapon could not have supported Sheffield's probable cause determination.

Sheffield seeks to use the testimony of Sims, the medical professional who evaluated Henderson, to show that Sheffield's probable cause determination was reasonable. Sims decided that Henderson did not qualify for involuntary inpatient treatment. Sheffield argues, however, that based on several omissions during the evaluation, the evaluation should have come out the other way. (See D.E. No. 106-1 at 497.) Notwithstanding the speculative nature of Sheffield's exercise, the results of Sims' evaluation and the purported omissions from that evaluation are not material in deciding whether Sheffield was reasonable in concluding there was probable cause. That information was not available to Sheffield when he made his probable cause determination. See Hunter v. Bryant, 502 U.S. 224, 228 (1991) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)) ("Probable cause existed if 'at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that Bryant had violated 18 U.S.C. § 871." (emphasis added)).

Henderson has raised a genuine dispute of material fact about whether there was probable cause and whether Sheffield's probable cause determination was reasonable. Sheffield's motion

17

for summary judgment on Henderson's Fourth Amendment claim against him is DENIED. Sheffield's motion for summary judgment on Henderson's Fourteenth Amendment claim is GRANTED. Henderson's Fourteenth Amendment claim against Sheffield is DISMISSED.

## V.  Conclusion

The City's motion for summary judgment is GRANTED. All claims against the City are DISMISSED.

Sheffield's motion for summary judgment on the Fourth Amendment claim against him is DENIED. Sheffield's motion on the Fourteenth Amendment claim against him is GRANTED. The Fourteenth Amendment claim against Sheffield is DISMISSED.

SO ORDERED this 22d day of July, 2021.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE